UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

FLOYD JENNINGS,

                Plaintiff,

v.                                             Case No. 2:06-cv-154
                                             HON. ROBERT HOLMES BELL

BRENT BRADLEY, et al.,

                Defendants.

_____/

### REPORT AND RECOMMENDATION

Plaintiff filed this prisoner *pro se* 42 U.S.C. § 1983 action against Michigan Department of Corrections (MDOC) employees Brent Bradley, Thomas Salo, Curt Rife, Donald MacDonald, Lloyd Rapelje, Gary Schertz, Robert Wickstrom, and Kevin Taskila. Defendants Salo, Rife, MacDonald, Rapelje, Schertz, and Wickstrom are being sued in their personal and official capacities; Defendants Bradley and Taskila are being sued in their personal capacities. Plaintiff seeks a total of $8,000 in compensatory damages and $8,000 in punitive damages against each Defendant and an injunction ordering the Defendants to stop the allegedly discriminatory cell slot management restriction.

Plaintiff's complaint alleges that in March of 2005 Defendant Bradley served Plaintiff a food tray that had a chunk of human feces between two slices of bread and in June of 2005 Bradley pushed a feces-smeared shield in Plaintiff's face while he was in top-of-bed (TOB) restraints. Plaintiff claims that, in the presence of Defendant Taskila, Bradley smashed the feces-smeared shield in his face again and pressed on the shield with his knee and also punched it while it was on

Plaintiff's face.  He alleges that he got a dislocated jaw and the side of his temple was swollen. Plaintiff further maintains that Defendants retaliated against him for filing grievances by putting him in soft restraints, turning off the water in his cell, and denying him food, water, and bathroom breaks for days while he was in TOB restraints.  Plaintiff claims he had to lie in his urine and feces and avers that it was common practice at Alger Maximum to deny prisoners food, water and bathroom breaks.

In addition, Plaintiff alleges that the cell slot management plan restriction violates equal protection and due process and constitutes cruel and unusual punishment.  Plaintiff claims that Defendants arbitrarily place black inmates on the restriction while similarly situated white prisoners are not put on cell slot management restriction. Plaintiff claims the restriction, which the staff allegedly call the "monkey act," is only given to black and Latino inmates and alleges that the staff directed racist comments towards him.  Plaintiff maintains that there is no written rule explaining what "cell slot management restriction" is and nothing that tells a prisoner what to do to avoid the restriction.  Plaintiff also claims he was never given notice or a hearing about this restriction, or any information regarding how long he would stay on the restriction.

Presently before the Court is Defendants' Motion for Summary Judgment filed pursuant to Fed. R. Civ. P. 56.  Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.*

- 2 -

at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).

The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true.  *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient.  *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.  *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

In the opinion of the undersigned, Plaintiff's retaliation claim fails on the merits. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct.  *Thaddeus-X*, 175 F.3d at 394.  Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's

- 3 -

alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing

*Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

   The filing of a prison grievance is constitutionally-protected conduct for which a

prisoner cannot be retaliated against.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001);

*Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*,

No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000).  However, Plaintiff has not provided

sufficient evidence that there is a causal connection between Defendants' alleged adverse actions and

the protected conduct of filing non-frivolous grievances.  Defendants have presented evidence that

Plaintiff was on cell slot management restriction because of his negative behavior, including

assaulting staff through the door slot with urine and feces, biting staff, threatening staff, and

intentionally masturbating in front of female staff.  Defendants maintain that a prisoner on cell slot

management restriction must place his hands on the back wall and kneel on the bed while officers

are delivering items.  However, Plaintiff continually failed to comply with officers' orders while he

was on the restriction.

   Plaintiff's allegations of the Defendants' retaliatory conduct are conclusory and

unsupported by evidence.  Defendants established that they had legitimate, non-retaliatory reasons

to impose the cell slot restriction on Plaintiff.  In the opinion of the undersigned, Plaintiff has not

succeeded in demonstrating the existence of a genuine issue of material fact as to whether

Defendants engaged in retaliatory conduct toward him.  Therefore, Defendants are entitled to

summary judgment on the retaliation claim.

   Plaintiff's complaint alleges that Defendants' actions violated his Fourteenth

Amendment right to procedural due process because he was not given prior notice of the cell slot

- 4 -

management plan restriction or any hearing on that restriction.  This claim is without merit on the basis of *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293 (1995).  In *Sandin*, the Plaintiff alleged that prison officials deprived him of procedural due process by refusing to allow him to present witnesses during a disciplinary hearing and then sentencing him to segregation for misconduct.  *Sandin*, 515 U.S. at 474, 115 S. Ct. at 2294.  In reversing the Ninth Circuit's decision that the prisoner had a liberty interest in remaining free of disciplinary segregation, the Supreme Court abandoned the search for mandatory language in prisoner regulations as previously called for under *Hewitt v. Helms*, 459 U.S. 460 (1983), and ruled instead that it was time to return to the due process principles which were established in *Wolff v. McDonnell*, 418 U.S. 539 (1974), and *Meachum v. Fano*, 427 U.S. 215 (1976).  *Sandin*, 515 U.S. at 483, 115 S. Ct. at 2300 (internal citations omitted).

In *Sandin*, the Supreme Court noted that in some cases, a restraint might be so extreme as to implicate rights arising directly from the Due Process Clause itself.  *Sandin*, 515 U.S. at 483-484, 115 S. Ct. at 2300 (internal citations omitted).  In addition, the Court recognized that States may create liberty interests protected by the Due Process Clause where the freedom from restraint imposed "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 484, 115 S. Ct. at 2300.  However, such restraints are rare and do not include, for example, transfer into solitary confinement.  *Sandin*, 515 U.S. at 486, 115 S. Ct. at 2301.  Nor does placement in administrative segregation normally constitute such a hardship.  *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir.), *cert. denied*, 522 U.S. 848 (1997); *Rimmer-Bey v. Brown*, 62 F.3d 789 (6th Cir. 1995).

A plaintiff seeking to allege a procedural due process violation based on a state created liberty interest must not only show it is derived from mandatory language in a regulation, but

also that it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 115 S. Ct. at 2300; *Rimmer-Bey*, 62 F.3d at 790-791.  Pursuant to *Sandin*, "a liberty interest determination is to be made based on whether it will affect the overall duration of the inmate's sentence, and there is no evidence here that the segregation will impact Plaintiff's sentence." *Jones*, 155 F.3d at 812.  In this case, the cell slot restriction placed on Plaintiff was based on legitimate concerns for the security of prison staff, prisoners, and the facility and does not constitute atypical or significant hardship.  Because Plaintiff in this case fails to allege facts constituting an "atypical and significant hardship," Plaintiff's claim that he was denied procedural due process is without merit.

        Plaintiff asserts that his equal protection rights were violated because the cell slot management plan restriction is only imposed on black and Latino prisoners.  The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985).  A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312 (1976).  A person's conduct is legitimate for purposes of this clause even though it may have been mean-spirited, ill-considered, or otherwise unjustifiable, objectionable or unreasonable, so long as it was not motivated by class-based discrimination.  *See Galbraith v. Northern Telecom Inc.*, 944 F.2d 275, 282 (6th Cir. 1991), *cert. denied*, 503 U.S. 945 (1992)  Absent some allegation or proof that the law was applied differently to plaintiff because of race, gender, age, or some other improper classification, no equal

- 6 -

protection claim has been stated.  *See Wagner v. Higgins*, 754 F.2d 186, 194 (6th Cir. 1985) (Conte, J., concurring).

The claim that a plaintiff was treated one way and everyone else was treated another way, by itself, is not sufficient to state an equal protection claim.  *Newell v. Brown*, 981 F.2d 880, 887 (6th Cir. 1992), *cert. denied*, 510 U.S. 842 (1993). To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  Plaintiff alleges that he was intentionally treated differently from similarly situated white prisoners because he is black.  However, Plaintiff provides no specific factual allegations to support his contention.  His allegations on this point are merely conclusory.  Defendants attest that there were several white prisoners on the cell slot management restriction, including some who were housed on Plaintiff's wing in the prison.  Moreover, Defendants have provided ample evidence that Plaintiff was on the cell slot restriction because of his assaultive and offensive behavior, not for discriminatory purposes.  Plaintiff's equal protection claim is without merit.

Moreover, in the opinion of the undersigned, Plaintiff's Eighth Amendment claims fail on the merits.  The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged "must result in the denial of 'the

minimal civilized measure of life's necessities.'" *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-601 (6th Cir. 1998).   The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348.   Moreover, "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

A  prisoner must allege that he has suffered or is threatened with suffering actual harm as a result of defendants' acts or omission before he can make a claim with an arguable basis in Eighth Amendment jurisprudence. *Wilson v. Yaklich*,148 F.3d 596 (6th Cir. 1998).   However, Plaintiff's claims that he was deprived of food, water, and bathroom breaks on numerous occasions are conclusory.   Defendants' log records establish that Plaintiff was regularly offered meals, water, and bathroom breaks.   The records establish that one some occasions when Plaintiff refused to comply with the cell slot management plan procedure of retreating to the back of his cell, he did not receive his meals, water or breaks.   Defendants have established that they had legitimate reasons for placing Plaintiff on the cell slot restriction.   Additionally, Plaintiff has provided no evidence that the loss of a few meals caused him to suffer extreme weight loss or other adverse medical problems.

Plaintiff alleges that Defendant Bradley violated plaintiff's Eighth Amendment rights. Plaintiff alleges that Defendant Bradley served plaintiff a sandwich with feces between two slices of bread and at least twice pushed a feces smeared shield into plaintiff's face.   Defendant Bradley denies the incidents and states that he does not control what is placed on the food trays.   Defendant Bradley does concede that he delivered the food tray on the date in question.   Further, Defendant Bradley states that plaintiff never complained about what was on the food tray.   Plaintiff however,

has submitted affidavits from other prisoners who support plaintiff's claim.  Prisoner Lorenzo Anthony allegedly overheard Defendant Bradley state that "he was the court and next time he'd make sure you had a lot of shitty gravy on your potatoes for dinner," stating that Plaintiff almost ate the shit last time.  Prisoner Al Humilanz stated he heard Defendant Bradley state "enjoy your shit your tray you place of shit," after giving Plaintiff his dinner tray.

As to the shield incidents, Defendant Taskila states that he inspected the shields before use and they were free of feces.  Further, Defendant Taskila states that he did not observe Defendant Bradley use any force against plaintiff.  The officers apparently entered the cell to perform some type of undisclosed maintenance inside the cell.  Defendant Bradley stated that he used the shield to protect the officers from Plaintiff spitting at them or throwing feces on them.

In the opinion of the undersigned, a question of fact exists on these issues.  Defendants have not established a lack of a genuine issue of fact.  If Defendant Bradley truly placed a "feces sandwich" on Plaintiff's food tray with the intention of Plaintiff eating the feces, there is no question that Plaintiff's Eighth Amendment rights were violated.  Attempting to have a prisoner eat feces presents obvious health risks that cannot be ignored or swept away as de minimus acts.  Similarly, pushing a feces covered shield in the face of a prisoner causes a similar concern.  Defendant Bradley is not entitled to dismissal of these claims because a question of fact exists.

Alternatively, Defendants move for qualified immunity.  Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir.

1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

      The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

      When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

      When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible

than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus, qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action

- 11 -

to prevent a patient from being beaten).  *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted.  *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429.  If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429.  These are both purely legal questions.  The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights.  *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991).

In the opinion of the undersigned, all Defendants, except Defendant Bradley, are entitled to qualified immunity.

Accordingly, it is recommended that Defendants' Motion for Summary Judgment (Docket #27) be granted in part, dismissing all Defendants except Defendant Bradley regarding the feces claims.  It is further recommended that Plaintiff's motion to strike (Docket #66) and motion to compel (Docket #43) be denied.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   August 2, 2007